**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| IN RE APPLICATION OF KUWAIT PORTS AUTHORITY AND THE PUBLIC INSTITUTE FOR SOCIAL SECURITY FOR AN ORDER TO TAKE DISCOVERY FOR USE IN FOREIGN PROCEEDINGS PURSUANT TO 28 U.S.C. § 1782 | Civil Action No. 1:22-mc-00064-RJL-RMM |

**CROWELL & MORING LLP'S OBJECTIONS TO THE REPORT AND RECOMMENDATION ON PETITIONERS' APPLICATION FOR DISCOVERY FOR USE IN A FOREIGN PROCEEDING**

Crowell & Moring LLP ("Crowell")[1], by and through undersigned counsel, respectfully files these Objections to the Report and Recommendation ("R&R") on Petitioners Kuwait Ports Authority ("KPA") and The Public Institution for Social Security's Application for Discovery for Use in a Foreign Proceeding ("Petitioners' Application"). *See* ECF No. 23. Crowell objects to the R&R's findings that (1) the discovery sought by KPA is "for use in" a foreign proceeding; (2) Crowell is not a participant in the foreign proceeding under the first *Intel* factor; and (3) KPA's discovery requests are not unduly burdensome under the fourth *Intel* factor. Crowell separately objects to the R&R's finding that the proposed deposition subpoenas should be issued since Petitioners' request to depose its adversary's prior counsel regarding the same facts underlying the pending litigation is not permitted under the Federal Rules of Civil Procedure, and the R&R does

---

[1] This Court granted Crowell's motion to intervene on September 1, 2023. Crowell is thus a party for purposes of filing objections to the magistrate judge's report and recommendation under Rule 72 of the Federal Rules of Civil Procedure. *See*, *e.g.*, *Miller v. Holzmann*, 2007 WL 778568 (D.D.C. Mar. 6, 2007) (considering intervenor's objections to magistrate's report and recommendation); *Buffalo Cent. Terminal v. United States*, 886 F. Supp. 1031 (W.D.N.Y. 1995) (same); *Eurospark Indus., Inc. v. Underwriters at Lloyds*, 567 F. Supp. 2d 345 (E.D.N.Y. 2008) (same).

not contain any analysis of whether such depositions are proper. In support thereof, Crowell states as follows:

## LEGAL STANDARD

Upon an objection to a magistrate judge's report and recommendation, the district court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636. The *de novo* standard of review applies to both conclusions of law and findings of fact. *See, e.g., Winston & Strawn LLP v. FDIC*, 841 F. Supp. 2d 225, 228 (D.D.C. 2012) ("The Court must conduct *de novo* review of objections to a magistrate judge's Report and Recommendation through independent reference to the record and the applicable law, and is free to conduct *de novo* review of the entire Report and Recommendation.").

## BACKGROUND

The Cayman action relates to whether certain parties breached their duties to The Port Fund, a limited partnership organized under Cayman law. *See* R&R at 2. Petitioners are limited partners of The Port Fund. *See id*. Petitioners claim in the Cayman proceeding that the general partner of The Port Fund and others engaged in fraudulent conduct. *See* ECF No. 1 at ¶ 1. Crowell represented the general partner of The Port Fund beginning in late 2017. *See id.* at ¶ 31.

The General Partner of The Port Fund is Port Link GP. *See* R&R at 2. The General Partner had three directors until May 2018: Saeed Dashti, Marsha Lazareva, and Abdulghfoor Alwadhi. *See id*. at 2-3. In March 2018, Port Link Holdings USA, Inc. acquired the General Partner. *See id*. at 3. Mark Williams was the sole director and shareholder of Port Link Holdings. *See id.* The Port Fund's investment manager was KGL Investment Cayman Ltd. *See id.* Defendants in the

2

Cayman action are Port Link Group Ltd., Mark Williams, Wellspring Capital Group, Inc. and KGL Investment Company Asia.

Petitioners seek discovery of documents and testimony from Crowell "for use in the Cayman Action." ECF No. 1 at ¶ 4. Petitioners represent that the requested discovery is "narrow in scope." *Id.* To be clear, Petitioners request production of the following categories of documents:

(1) ***All records of communications*** relating or referring to (i) the Investment Manager's claim(s) against The Port Fund and/or the General Partner for breach of the Investment Management Agreement; (ii) the Investment Manager's demand(s) for payment from The Port Fund and/or General Partner with respect to said claim(s); (iii) the proceedings before the DIFC Court; and (iv) the Wellspring Payment.

(2) ***All documents***, including draft documents, internal communications and notes, relating or referring to Crowell's consideration, analysis and/or advice regarding the Investment Manager's claim(s) for breach of the Investment Management Agreement, demand(s) for payment, the proceedings before the DIFC Court, and the Wellspring Payment.

(3) ***All*** engagement letters (or other communications relating or referring to the fact and/or terms of Crowell's engagement) directly or indirectly relating to the Investment Manager's claim(s) against The Port Fund and the General Partner for breach of the Investment Management Agreement, the proceedings before the DIFC Court and/or the Wellspring Payment.

(4) ***All*** invoices relating or referring to services performed by Crowell, or at the direction or under the supervision of Crowell for The Port Fund, the General Partner, the Investment Manager, Williams and/or any other person or entity regarding the

3

        Investment Manager's claim for breach of the Investment Management Agreement, the proceedings before the DIFC Court, and/or the Wellspring Payment.

(5) *All documents and communications* relating to or referring to Crowell's conflicts checks, anti-money laundering checks, or due diligence regarding the legal services it provided to the The Port Fund, the General Partner, the Investment Manager, Port Link Holdings, Williams, Wellspring and/or any other person or entity regarding the Investment Manager's claim for breach of the Investment Management Agreement, the proceedings before the DIFC Court, and/or the Wellspring Payment.

(6) *All documents and communications* relating to or referring to . . . the Law Custodian Payment . . . [and] . . . KGLI Payment.

(7) *All documents and communications* relating to services performed by Crowell, or third parties engaged by Crowell and/or acting at Crowell's instruction[], and paid for by The Port Fund and / or the General Partner from the time it was engaged by The Port Fund to date . . .

ECF No. 1-1 at 114-116.

    Petitioners' proposed deposition subpoenas further request testimony by Crowell attorneys on six topics related to Crowell's communications with The Port Fund, The Port Fund's general partner, Williams, the Investment Manager and/or any other person or entity. ECF No. 1-1 at 123-124. Each of the topics in the proposed deposition subpoenas overlap with the topics listed in the proposed document subpoena.

## ARGUMENT

### I.    Discovery sought by KPA is not "for use in" a foreign proceeding.

    The magistrate judge's R&R erred by concluding that the discovery sought by KPA is for use in a foreign proceeding. Petitioners seeking the assistance of Section 1782 must satisfy its

4

statutory requirements that (1) the discovery be sought from a person residing or found in the district, (2) the request be made by an "interested person," and (3) the testimony or documents be produced "for use in a proceeding in a foreign or international tribunal." 28 U.S.C. § 1782(a). Section 1782 clearly requires that discovery sought must be "for use in a proceeding in a *foreign* or international tribunal." *Id.* (emphasis added). Discovery cannot be sought for use in a contemplated proceeding in the United States.

The R&R erred by not analyzing the proposed subpoena requests to determine whether the discovery is "for use in" a foreign proceeding. Such analysis would have led to the conclusion that Petitioners are seeking discovery for use in a contemplated proceeding *against Crowell* in the United States. For example, Petitioners request, *inter alia*, "[a]ll documents, including draft documents, internal communications and notes, relating or referring to Crowell's consideration, analysis and / or advice," "documents and communications relating or referring to Crowell's conflicts checks, anti-money laundering checks, or due diligence regarding the legal services it provided to" the Clients, and "[a]ll documents and communications relating to services performed by Crowell, or third parties engaged by Crowell and/or acting at Crowell's instruction." ECF No. 1-1 at 114-116. Requests 2, 5, and 7 of the proposed document subpoena clearly seek the production of Crowell's internal analyses, advice, drafts, documents, communications, or notes—irrespective of whether such materials were provided to any client—for use in proceedings to be initiated against Crowell. *See id.*

The magistrate judge further erred by concluding that "[t]here is no suggestion that Petitioners intend to sue Crowell separately[.]" *See* R&R at 11. KPA *has* threatened to sue Crowell in the District of Columbia. The parties appeared before Magistrate Judge Meriweather on November 28, 2023. At this hearing, undersigned counsel informed Magistrate Judge Meriweather

5

that KPA had threatened to sue Crowell. *See* Nov. 28, 2023 Hr'g Tr. at 9:14-20 (stating that Petitioners "ha[ve] threatened to sue Crowell . . . the information will be used for that litigation against Crowell."). This fact, coupled with the text of the proposed subpoena—which clearly seeks Crowell's internal records for the purpose of identifying wrongdoing by Crowell—confirms that at least some of the discovery sought by KPA is not for use in a foreign proceeding. Yet the magistrate judge's analysis disregarded this fundamental fact.

Petitioners cannot use the Cayman proceeding as a ruse to obtain evidence for a contemplated proceeding against Crowell. Because portions of the proposed subpoena do not request discovery for use in the pending Cayman proceeding, the magistrate judge erred in recommending that the Court grant Petitioners' Application in full. This Court should decline to adopt the R&R, and instead, deny the Application as to the proposed subpoena requests that are not "for use in" a foreign proceeding.

## II. Crowell is a participant in the foreign proceeding, weighing against issuance of the proposed subpoena under the first *Intel* factor.

Even if Section 1782's threshold legal requirements are met, courts weigh the four discretionary factors articulated by the Supreme Court in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004), to determine whether to permit discovery under Section 1782. *See* R&R at 11. Under *Intel*, the court first considers whether "the person from whom discovery is sought is a participant in the foreign proceeding," in which "the need for § 1782(a) aid is generally not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad." 542 U.S. at 264. The first factor likewise favors denying an application where the petitioner seeks discovery from "a related, but technically distinct entity" to the party in the foreign proceeding. *In re Judicial Assistance Pursuant to 28 U.S.C. § 1782 by Macquarie Bank Ltd.*, No. 14-cv-00797, 2015 WL 3439103, at *6 (D. Nev. May 28, 2015) (citing *Schmitz v. Bernstein*

6

*Liebhard & Lifshitz, LLP*, 376 F.3d 79, 85 (2d Cir. 2004) ("Although technically the respondent in the district was [the foreign counter-party's law firm], for all intents and purposes petitioners are seeking discovery from DT, their opponent in *the* German litigation") (emphasis added)); *see also Kiobel v. Cravath, Swaine & Moore LLP*, 895 F.3d 238, 245 (2d Cir. 2018) (holding that the first *Intel* factor weighs against production when the real party from whom documents are sought is involved in foreign proceedings).

The R&R incorrectly concluded that the first factor weighs in favor of granting Petitioners' Application "because they seek subpoenas addressed to a 'nonparticipant in the matter arising abroad.'" R&R at 11 (quoting *Intel*, 542 U.S. at 264-65). Here, Crowell's clients—the general partners of The Port Fund—are parties to the foreign proceeding. ECF No. 1 at ¶ 10. Crowell acted as counsel to The Port Fund—a party to the foreign proceeding—through its general partner. *Id.* at ¶ 3. While Petitioners' Application requests the production of records from Crowell, Petitioners functionally seek records from Crowell's client—Petitioners' party-opponent in the Cayman proceeding—to, among other things, substantiate Petitioners' allegations in the Cayman proceedings. *See Macquarie Bank*, 2015 WL 3439103, at *6. Petitioners' Application acknowledges as much, arguing that "[t]he nature, appropriateness and accuracy of Crowell's advice is highly relevant to the Cayman action concerning ***whether Williams and the General Partner were justified in conceding jurisdiction and liability in the DIFC Court proceedings and whether in doing so they breached their fiduciary, statutory and contractual duties to the Port Fund***" and "[t]he documents and testimony requested by Petitioners will show why these third parties were engaged, on what basis the payments using The Port Fund monies were made, whether those payments were in the best interests of The Port Fund and, accordingly, ***whether the payments***

7

*constituted a breach of legal duties owed The Port Fund*." ECF No. 1 at ¶¶ 47, 74 (emphases added).

The magistrate judge erred by recommending that this Court grant Petitioners' Application. The magistrate should have recommended that the Court narrow the proposed subpoena to eliminate requests that seek the production of documents in possession of a party to the Cayman proceeding. This Court should decline to adopt the R&R, and instead deny the Application.

> **III.    The proposed subpoena is unduly burdensome and facially calls for the production of privileged information, weighing against issuance of the proposed subpoena under the fourth *Intel* factor.**

The fourth *Intel* factor considers whether the proposed subpoena includes "unduly intrusive or burdensome requests" that "may be rejected or trimmed" under Rule 45(d) of the Federal Rules of Civil Procedure. *Intel*, 542 U.S. at 265; *see also In re Polymer Sols. Int'l, Inc.*, No. DKC 18-1864, 2019 WL 1239778, at *8 (D. Md. Mar. 18, 2019). Relevant to this analysis is the burden imposed on the responding party "due to privilege and work product concerns." *Menashe v. Covington & Burling LLP*, 552 F. Supp. 3d 35, 44 (D.D.C. 2021). The magistrate judge failed to give sufficient consideration to the undue burden this proposed subpoena would place on Crowell by concluding that the fourth *Intel* factor "weighs moderately in favor of Petitioners." R&R at 12.

> **a.   The proposed subpoena is unduly burdensome because the requested information is available from Crowell's client, a party to the pending foreign proceeding.**

The magistrate judge failed to consider that the proposed subpoena is unduly burdensome because it seeks the production of documents in the possession of a party to the Cayman proceeding. "When the information sought [in a section 1782 application] is equally available through the foreign proceeding from a party to that proceeding, such requests targeting a different person in the United States are by their very nature unduly burdensome." *In re Application of Lucille Holdings PTE. Ltd. Under 28 U.S.C. § 1782*, 2022 WL 1421816, at *16 (D.D.C. May 5,

2022) (quoting *Macquarie Bank*, 2015 WL 3439103, at *9). *See also* Fed. R. Civ. P. 26(b)(2)(C) (prohibiting discovery that "can be obtained from some other source that is more convenient, less burdensome, or less expensive").

Here, the plain text of the proposed subpoena confirms that the records sought by Petitioners are available through parties to the Cayman action—a fact wholly disregarded by the magistrate judge. Specifically, Petitioners request "All records of communications . . . including communications with ***Williams, Wellspring, the Investment Manager, the General Partner***, ***The Port Fund***..." (who are all parties to the Cayman proceeding); all documents regarding ***advice given to the Investment Manager*** regarding certain claims; and all ***engagement letters and invoices*** related to this matter. ECF No. 1-1 at 114-116 (emphases added). These materials are all available from parties to the litigation. It would be an undue burden on Crowell to respond to Petitioners' discovery requests in the United States when Petitioners could request this information from a party-opponent in the Cayman proceeding.

    **b. The proposed subpoena is unduly burdensome and not proportional to the needs of the case because the requested information is not relevant to the pending foreign proceeding.**

"Generally speaking, the standards for discovery set out in the Federal Rules of Civil Procedure also apply when discovery is sought under § 1782(a)." *In re Veiga*, 746 F. Supp. 2d 8, 19 (D.D.C. 2010). In the Section 1782 context, however, relevance alone does not dictate whether the scope of a subpoena is proper. Rather the evidence must be "something that will be employed with some advantage or serve some use in the proceeding." *Certain Funds, Accts. and/or Inv. Vehicles v. KPMG, L.L.P.*, 798 F.3d 113, 120 (2d Cir. 2015) (quoting *Mees v. Buiter*, 793 F.3d 291, 298 (2d Cir. 2015)). "[T]he simple fact that requested information is discoverable under Rule 26(a) does not mean that discovery must be had." *Nicholas v. Wyndham Int'l, Inc.*, 373 F.3d 537,

9

543 (4th Cir. 2004) (denying discovery that was "cumulative and duplicative, unduly burdensome, and harassing").

The magistrate judge erred by concluding that the proposed subpoena was "appropriately tailored to the claims at issue in the Cayman litigation." R&R at 13. As noted above, the Cayman proceeding relates to whether certain parties breached their duties to Port Fund by engaging in certain financial transactions. ECF No. 1 at ¶ 3. This determination turns entirely on whether these parties engaged in these transactions and whether these transactions, in turn, constituted a breach of their duties to The Port Fund. Yet the proposed subpoena goes far beyond these issues to request Crowell's internal communications, drafts, and analyses—irrespective of whether those documents were provided to its client. How can Crowell's internal communications be relevant to Petitioners' claims against a party other than Crowell? The answer is that these communications cannot be relevant to the Cayman proceeding. And, on the flip side, to the extent that Crowell provided advice to certain clients who are now party to the Cayman proceeding, Petitioners can seek that information from their party-opponent through the Cayman court's discovery procedures.

    **c. The proposed subpoena is unduly burdensome because it requests extensive privileged material.**

A subpoena is unduly burdensome where it requests privileged information; where the requested privileged information is tenuously relevant to the foreign proceeding and would be of limited usefulness, such burden is exacerbated. *See Hulley Enters. v. Baker Botts LLP (In re application for an Order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in a Foreign Proceeding)*, 286 F. Supp. 3d 1, 13 (D.D.C. 2017) (denying Section 1782 subpoena that targeted sensitive privileged information where evidence was of moderate relevance); *see also Covington*, 552 F. Supp. 3d at 41-42 (denying Section 1782 subpoena targeting privileged information where

information sought "could not have more than limited usefulness to the [foreign action], at best") (internal citations omitted).

The magistrate judge erred in concluding that "the scope of any privilege issues is currently unclear." R&R at 15. Petitioners' proposed subpoena clearly requests the production of materials protected by the attorney-client privileged and the attorney-work product privilege. Crowell & Moring is a law firm. The proposed subpoena requests, *inter alia*, "draft documents, internal communications and notes, relating or referring to Crowell's consideration, analysis and / or advice," and "[a]ll documents and communications relating to services performed by Crowell." ECF No. 1-1 at 114, 116. As was the case in *Covington*, the "nature of the underlying litigation and the scope of petitioners' discovery request leaves little to the imagination regarding the sensitive attorney-client information potentially at issue." *Covington*, 552 F. Supp. 3d at 44 (quoting *Hulley Enters. v. Baker Botts LLP*, No. 17-1466, 2017 WL 3708028, at *5 (D.D.C. Aug. 18, 2017)). Any potentially responsive files in Crowell's possession consist overwhelmingly of material protected by the attorney-client privilege or attorney work-product privilege. Accordingly, the magistrate judge erred in not giving sufficient consideration to the privileged nature of the requested documents.

### IV.     The request to depose counsel should be denied.

In addition to seeking the production of documents, Petitioners' Application seeks to depose two Crowell attorneys on the same topics for which it seeks the production of documents. *See* ECF No. 1-1 at 123-124. Petitioners' request to depose Crowell—prior counsel to their adversary in the Cayman proceeding—infringes upon the attorney-client relationship. *See*, *e.g.*, *Sterne Kessler Goldstein & Fox, PLLC v. Eastman Kodak Co.*, 276 F.R.D. 376, 380-85 (D.D.C. 2011) (denying subpoena to depose "former counsel to a party in pending litigation on matters that

11

are plainly at issue in that litigation, even when the proposed deponent is not currently opposing trial counsel").

Depositions of counsel are generally frowned-upon. *See, e.g., Hickman v. Taylor*, 329 U.S. 495, 512 (1947) ("The general policy against invading the privacy of an attorney's course of preparation is so well recognized and so essential to an orderly working of our system of legal procedure . . . ."). Nonetheless, the R&R errs by failing to make *any* finding regarding the appropriateness of Petitioners' request to depose two Crowell attorneys. Accordingly, this Court should find that the proposed deposition subpoenas should not be issued.

Pursuant to Rule 26 of the Federal Rules of Civil Procedure, the Court may limit discovery "for good cause" and "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . . ." Fed. R. Civ. P. 26(c)(1). Courts generally apply a balancing test to weigh the burden on the moving party against the need of the party seeking the deposition. *See Flanagan v. Wyndam Int'l Inc.*, 231 F.R.D. 98, 102 (D.D.C. 2005); *see also In re Subpoena Issued to Dennis Friedman*, 350 F.3d 65, 72 (2d Cir. 2003) ("[T]he standards set forth in Rule 26 require a flexible approach to lawyer depositions whereby the judicial officer supervising discovery takes into consideration all of the relevant facts and circumstances to determine whether the proposed deposition would entail an inappropriate burden or hardship.").

First, the magistrate judge erred by not considering that the proposed depositions are "disproportional to the needs of the case" and "risk the inadvertent disclosure of privileged information." *Mannina v. District of Columbia*, 334 F.R.D. 336, 340 (D.D.C. 2020) (denying request for deposition because deposition would be redundant, encroach on privileged information, and interfere with counsel's ability to represent client); *see also United States v. All Assets Held in Account Number XXXXXXXX*, No. 13-cv-1832, 2019 WL 95605, at *8 (D.D.C. Jan. 3, 2019)

(denying request for deposition because risk of encroaching on privilege and work-product issues and the availability of less burdensome sources for information).

The magistrate judge failed to balance the value of any unique, relevant, and non-privileged information that would be discoverable through the depositions of two attorneys against the harm of obtaining that information. If the magistrate had engaged in such balancing, the facts of this case would mandate a finding that the harm of these depositions greatly outweighs any speculative benefit to Petitioners. "Allowing depositions of opposing counsel . . . disrupt[s] the effective operation of the adversarial system by chilling the free and truthful exchange of information between attorneys and their clients." *Sterne Kessler*, 276 F.R.D. at 380-81. Attorneys must be able to communicate candidly with their clients regarding impending litigation without fear that their advice will later be disclosed by counsel. Indeed, in a single sentence, Petitioners state that Crowell's advice to the Port Fund "is highly relevant to the Cayman Action." ECF No. 1 at ¶ 47. Yet, Petitioners fail to provide any explanation or basis for how this testimony on such (privileged) topics is crucial and unique to the preparation of the case, particularly where the requested information is discoverable from Petitioners' party-opponent in the Cayman proceeding. Accordingly, the burden on the deponents far outweighs any benefit of obtaining privileged, redundant information. The R&R erred in recommending that the proposed deposition subpoenas be issued without employing this balancing test.

Second, the magistrate judge failed to consider that the deposition requests retread the same ground covered by Petitioners' document requests. In a recent case, Judge Faruqui evaluated a request for a Rule 30(b)(6) subpoena pursuant to Section 1782. There, Judge Faruqui noted that the petitioner "seeks this deposition to make sense of the document it has asked [respondent] to produce—an analysis which [petitioner] could conduct through its own examination of

13

documents." *See In re Application Pursuant to 28 U.S.C. § 1782 of the Republic of Gambia*, No. 1:20-mc-00036-JEB-ZMF, ECF No. 22 at 29 (D.D.C. Sept. 22, 2021). Similarly, in this case, Petitioners seek to depose Crowell attorneys on the same topics for which they have requested the production of documents. The depositions serve little value because of their substantial overlap with the document requests.

Third, the information sought runs a significant "risk of encroachment on privileged topics." *Long v. Motion Picture Ass'n of Am.*, No. 19-cv-2088, 2021 WL 5446278, at *9 (D.D.C. 2021) (rejecting deposition request because the information sought was privileged). It is well established that a party may not force the "disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney . . . ." *Id.* at *2 (quoting Fed. R. Civ. P. 26(b)(3)(B)); *see also Dir., Office of Thrift Supervision v. Vinson & Elkins, LLP*, 124 F.3d 1304, 1307 (D.C. Cir. 1997) ("Opinion work product . . . is virtually undiscoverable.").

Here, all of the information Petitioners seek to discover through depositions of counsel is privileged. *See* ECF No. 1 at ¶ 49 ("Petitioners also seek . . . Crowell's consideration and analysis of the Investment Manager's claims . . . and the advice Crowell provided . . . [and] Crowell's communications with The Port Fund . . . concerning the claims . . . ."). An attorney's mental impressions and communications with his client are protected from disclosure. Petitioners will learn little, if any, relevant information by deposing Crowell attorneys without violating attorney-client privilege or exceeding work-product limits against disclosure.

Finally, Petitioners can seek the requested information from more appropriate and convenient sources. *See Sterne Kessler*, 276 F.R.D. at 385. Petitioners can seek testimony from the parties to the Cayman proceeding regarding the advice obtained from Crowell. Should Petitioners elect to secure such testimony once the Cayman court sets discovery procedures, the

Cayman court is also better situated than this Court to evaluate any claims that testimony is protected by the attorney-client privilege.

Petitioners' proposed deposition subpoenas encroach on attorney-client privilege protections and circumvent discovery in foreign proceedings. Enabling such an abuse of the discovery process hinders the administration of justice. The R&R erred by failing to evaluate Petitioners' request to depose counsel under the Federal Rules of Civil Procedure. This Court should deny Petitioners' Application.

## CONCLUSION

For the reasons stated above, Crowell respectfully objects to the R&R's recommendation that this Court grant Petitioners' Application. This Court should deny Petitioners' Application.

Dated: August 19, 2024                     Respectfully Submitted,

*/s/ Anthony T. Pierce*
Anthony T. Pierce
Allison T. Coffin
AKIN GUMP STRAUSS HAUER & FELD LLP
2001 K Street, N.W.
Washington, D.C. 20006
Tel: (202) 887-4000
Fax: (202) 887-4288
Email: apierce@akingump.com

*Counsel for Crowell and Moring LLP*

15

**CERTIFICATE OF SERVICE**

I hereby certify that on the 19th day of August, 2024, a true and correct copy of the foregoing was served on all counsel of record using the Court's electronic filing system.

/s/ Anthony T. Pierce
Anthony T. Pierce
AKIN GUMP STRAUSS HAUER & FELD LLP
2001 K Street, N.W.
Washington, D.C. 20006
Tel: (202) 887-4000
Fax: (202) 887-4288
Email: apierce@akingump.com